UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOOD I TRADING, INC., | : |
| Plaintiff, | : |
| vs. | : Case No. 1:08-cv-00905-RMC |
| HANA WASHINGTON, INC., | : |
| Defendant. | : |

MOTION FOR LEAVE TO FILE LATE ANSWER AND VACATE DEFAULT

Pursuant to Federal Rule 7(b), defendant moves for leave to file a late answer, and to vacate the default previously entered  The grounds for this motion are stated below.

A. NATURE OF THE CASE

1. Plaintiff sues defendant for alleged breach of a contract by which plaintiff agreed to provide transaction processing services for an automated teller machine ("ATM") owned by defendant.

2. As set forth in defendant's attached affidavit, defendant did not receive the complaint and transmittal letter from its corporate registered agent, but acted promptly in this matter after receiving notice of default.

3. There is no prejudice to the plaintiff in allowing the defendant to file its answer, enclosed herewith, given the minimal delay to date in this case.  Defendant has several meritorious defenses to the claim, as set forth in the answer, discussed below in the "Factual Background" and "Defenses" sections of this motion, and confirmed by the attached affidavit of defendant's president and 51% shareholder, Kyong Oh.

B.  FACTUAL BACKGROUND

4. Defendant Hana Washington, Inc. was introduced to plaintiff by the seller of "Harbor Cafe" just prior to Hana Washington's acquisition of the business, on March 13, 2008.  The business seller had contracted with plaintiff to provide processing services to the ATM machine owned by the seller and incorporated as a part of the "Harbor Cafe" business.  The parties in this case executed a contract which provided a two dollar ($2.00) charge per ATM transaction, with plaintiff to receive 25 cents of each transaction, and defendant to receive $1.75 per transaction.

5. Plaintiff misrepresented various material aspects of the contract to defendant's president Kyong Oh, and by its fraud, induced execution of the contract.  Specifically, to induce defendant to contract with the plaintiff, plaintiff's sales agent Dong Bin Lee stated that plaintiff had customarily paid defendant's predecessor-in-interest $1.60 per ATM transaction, and would pay the defendant $1.75 per transaction, whereas in fact, plaintiff had customarily paid defendant's predecessor-in-interest $1.90 per transaction.

6. Furthermore, when plaintiff's salesman Dong Bin Lee presented the Exhibit A contract to defendant's president Kyong Oh, he was asked if there was anything prejudicial or unusual in the contract.  Lee replied that the contract was "normal" and did not mention the 10-year, non-cancellable nature of the contract, nor the gross nature of the termination damages specified under the contract.  Defendant signed the contract, and was informed by Lee that a company representative would arrive Monday, March 17, 2008, to initialize the service.

7. On Friday, March 14, 2008 at a settlement on Hana Washington's acquisition of the business, its principals learned from the seller that plaintiff, in fact, had been remitting $1.90 per ATM transaction to the seller, out of each $2.00 processing fee, rather than $1.60.  Defendant was angered by this misrepresentation, and when the plaintiff failed to send its representative to

initialize the service on Monday, March 17, 2008, defendant called plaintiff and announced it would not be bound by the contract.

8. Plaintiff did not ever initialize the system and neither party to this action has ever received any processing fees pursuant to the contract.

C. DEFENSES

i. Fraud

9. Misrepresentation of the previous contract pricing and more importantly, the actual contract content, constitute fraud under Maryland law, which is applied to this transaction by ¶14 of the contract, attached as Exhibit A to the complaint. Benjamin v. Erk, 138 Md.App. 459, 771 A.2d 1106 (Md.App. 2001)(failure to read document may be excused where contract contents are misrepresented).

ii. Unenforceable Liquidated Damages Provision

10. The liquidated damages provision at ¶10 of the contract attached as Exhibit A to the complaint allows the plaintiff to select from three different amounts as liquidated damages: (a) an amount equal to all fees received by defendant from its new ATM service provider for the remainder of the term under the putative 10-year contract with plaintiff, or (b) an amount equal to the remaining number of months under the putative contract multiplied by "the average surcharge revenues earned by" defendant during the six (6) month contract period preceding the termination, or (c) if the contract has not been in force for six (6) months, then an amount equal to the remaining number of months under the putative contract multiplied by the highest monthly surcharge revenue earned by defendant during the putative contract term.

11. To be upheld as a valid liquidated damages provision, the contract clause must set forth a mandatory agreement before the fact which may not be altered to correspond to actual damages determined after the breach. Massachusetts Indemnity & Life Ins. Co. v. Dresser, 269 Md. 364, 368-69, 306 A.2d 213, 216 (1973). Here, the damages clause, which allows plaintiff the option between a fixed and liquidated amount (number of remaining contract months multiplied by pre-breach average or peak monthly revenue earned by defendant under the contract), or alternatively an amount measured by events occurring after the fact, i.e., the fees earned by defendant through any alternative ATM service provider over the life of the putative contract with plaintiff, is not a valid liquidated damages provision.

12. Defendant denies that the liquidated damages provision contained in the parties' contract applies to the breach charged to the defendant in this case. The liquidated damages provision, at least that part of the provision which establishes a fixed and liquidated amount (number of remaining contract months multiplied by pre-breach average or peak monthly revenue earned by defendant under the contract), can logically apply only if the ATM service has actually been set up and revenues have been earned by defendant. That did not happen in this case, and the plaintiff's affidavit by its president Wonro Lee, stating that the defendant earned $670.59 as "average monthly surcharge revenues during the prior six months" is inaccurate.[1]

13. The liquidated damages provision is on its face a penalty. While the maximum revenue which plaintiff could derive from its contract was 25 cents per transaction, with the defendant to retain $1.75 per ATM transaction, the liquidated damages provision adopts the total

---

[1] It appears that plaintiff has used ATM revenue earned by defendant's predecessor-in-interest for this calculation. Such calculation is inappropriate as the Exhibit A contract clearly states that plaintiff's liquidated damages are measured by the revenue earned "under this Agreement." Nowhere is plaintiff's predecessor-in-interest identified as a party to the Agreement or as the measuring stick for liquidated damages in case of breach.

revenues imputed to the defendant over the life of the putative contract, rather than the far lesser revenue which would accrue to the plaintiff, as the proper compensation amount. By definition, this "estimate" of liquidated damages, which exceeds the total revenue which the plaintiff could earn over the life of the contract by seven-fold (1.75/.25), constitutes an unreasonable approximation of likely damages, and is therefore a penalty. <u>Willard Packaging Co., Inc. v. Javier</u>, 169 Md.App. 109, 899 A.2d 940 (2006).

    iii. <u>Claim Does Not Meet Required Jurisdictional Amount</u>

    14. Consideration of the problems inherent in the liquidated damages provision, especially the seven-fold exaggeration of potential damages, indicates that any damages which might be awardable under plaintiff's breach of contract claim are below the $75,000.00 jurisdictional amount.

    D. <u>SUMMARY</u>

    15. Plaintiff will not be prejudiced if it is required to prosecute its case on the merits, as defendant acted promptly to comply with court procedures once it learned of these proceedings. In view of this jurisdiction's preference for adjudication on the merits and the defenses which can be brought to bear against the plaintiff's claim, <u>Biton v. Palestinian Interim Self Government Authority</u>, 233 F.Supp.2d 31 (D.D.C.2002), the Court should grant this motion and deem the attached answer as filed.

                                                          <u>Simon M. Osnos   /s/</u>
                                                          Simon M. Osnos
                                                          Osnos & Associates, LLC
                                                          7700 Leesburg Pike, #434
                                                          Falls Church, Virginia 22043
                                                          703-356-8233

## CERTIFICATE OF SERVICE

      On September <u>3</u>, a copy of the foregoing motion was sent first class mail to plaintiff's counsel as follows:

Martin H. Schreiber II
Law Office of Martin H. Schreiber
3600 Clipper Mill Road, Suite 201
Baltimore, Maryland 21211

                                          <u>Simon M. Osnos /s/</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GOOD I TRADING, INC., :
:
    Plaintiff, :
:
vs. : Case No. 1:08-cv-00905-RMC
:
HANA WASHINGTON, INC., :
:
    Defendant. :

## AFFIDAVIT

1. My name is Kyong Oh. I am the president and 51% shareholder of Hana Washington, Inc.

2. While it appears that the resident agent for the corporation, Professional Corporation Service, was served, I did not receive notice, as explained below.

3. The owner of Professional Corporation Service, Mr. Bernard Dietz, has provided me with an unsigned copy of a transmittal letter dated July 8, 2008, indicating that the complaint was mailed to me, individually, at the corporation's Harbor Café business address (copy attached Exhibit A).

4. Mail is not delivered directly to Harbor Café, but to a group mailbox at Washington Harbor, which has mail boxes reserved for individual tenants. For a two-week period during the months of June and July 2008, we noticed that the normal volume of mail did not arrive in our mailbox at Washington Harbor.

5. I never got a copy of the complaint but I did receive a letter dated August 8, 2008 from Mr. Dietz at Professional Corporation Service (copy attached Exhibit B). The envelope in which the letter was sent is post-marked August 12, 2008 (copy attached Exhibit C). I received that

letter during the week of August 11-15, 2008, as best I can remember, opened the letter the following week on August 22, 2008, and called my family attorney, Mr. Moon. When I met Mr. Moon on Thursday, August 28, 2008, he informed me that he is not a member of the federal bar in the District of Columbia. I delivered my documents to attorney Simon M. Osnos later that day, and met Mr. Osnos on September 2, 2008 to review the case.

6. Among the defenses the corporation has is that the plaintiff made misrepresentations to induce me to sign the ATM service contract for Hana Washington, Inc. Specifically, plaintiff's sales agent Dong Bin Lee stated that plaintiff had customarily paid the seller of the corporation's business $1.60 per ATM transaction, and would pay the us $1.75 per transaction, whereas in fact, plaintiff paid the seller $1.90 per transaction.

7. Furthermore, when Dong Bin Lee presented the Exhibit A contract to me I asked if there was anything prejudicial or unusual in the contract, he replied the contract was normal and did not mention that the contract could not be cancelled for 10 years, nor the very high amount of the termination damages specified under the contract.

8. Plaintiff never set up or programmed the ATM unit. We never did any business with the plaintiff. Nonetheless, plaintiff has filed an erroneous affidavit in this case as the basis for its liquidated damages claim indicating the average monthly surcharge revenue earned by Hana Washington under the contract was $670.59.

_____
Kyong Oh

SUBSCRIBED AND SWORN TO BEFORE ME ON SEPTEMBER 2, 2008.

_____
NOTARY PUBLIC

Simon M. Osnos
Commonwealth of Virginia
Notary Public
Commission No. 245843
My Commission Expires 11/30/2009

# Exhibit A

*Professional Corporation Service*
209 Pennsylvania Avenue, S.E.
Washington, D.C. 20003

(202) 548-8000

*Bernard C. Dietz*
*President*

July 8, 2008

*Fax:*
(202) 547-5571

Mr. Kyong S. Oh
c/o Harbour Café
3000 K Street, NW, #115
Washington, DC 20007

RE: HANA WASHINGTON, INC.

Dear Mr. Oh:

Professional Corporation Service, Inc., as your Registered Agent, was served with the enclosed lawsuit against you. You must give this to your attorney for an immediate response.

Yours truly,

Bernard C. Dietz

BCD/cd
Enclosure

# Exhibit B

*Professional Corporation Service*
209 Pennsylvania Avenue, S.E.
Washington, D.C. 20003

(202) 548-8000

Bernard C. Dietz
President

August 8, 2008

Fax:
(202) 547-5571

Mr. Kyong S. Oh
c/o Harbour Café
3000 K Street, NW, #115
Washington, DC 20007

RE: GOOD I TRADING, INC. v. HANA WASHINGTON, INC.

Dear Mr. Oh:

As Registered Agent for your corporation, we received a copy of the enclosed Default issued against you for your failure to answer this lawsuit. You should immediately discuss this with your attorney.

Yours truly,

Bernard C. Dietz

BCD/cd
Enclosure

Default - Rule 55A (CO 40 Revised-DC 02/00)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GOOD I TRADING, INC.

    Plaintiff(s)

v.

Civil Action No. 08-905 (RMC)

HANA WASHINGTON, INC.

    Defendant(s)

RE: HANA WASHINGTON, INC. d/b/a HARBOUR CAFE

## DEFAULT

It appearing that the above-named defendant(s) failed to plead or otherwise defend this action though duly served with summons and copy of the complaint on July 3, 2008, and an affidavit on behalf of the plaintiff having been filed, it is this 4th day of August, 2008 declared that defendant(s) is/are in default.

NANCY MAYER-WHITTINGTON, Clerk

By: _T. Gonia_
Deputy Clerk

# Exhibit C



Professional Corporation Service, Inc.
209 Pennsylvania Avenue, S.E.
Washington, D.C. 20003

Mr. Kyong S. Oh
c/o Harbour Café
3000 K Street, NW, #115
Washington, DC 20007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GOOD I TRADING, INC., :
:
    Plaintiff, :
:
vs. : Case No. 1:08-cv-00905-RMC
:
HANA WASHINGTON, INC., :
:
    Defendant. :

### ORDER

Upon consideration of the defendant's motion to file a late answer and any opposition, it is hereby ORDERED this ___ day of _____. 2008 that the motion be granted. The defendant's answer, attached to the motion, is deemed filed, and the default in this case is hereby vacated.

_____
J U D G E